1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   VENIS J. MAHORNE,                          Case No. 1:23-cv-00415-CDB (SS)

12              Plaintiff,                        ORDER GRANTING PLAINTIFF'S
                                                 MOTION FOR SUMMARY JUDGMENT[1]
13        v.
                                                 (Docs. 15, 17, 18)
14   COMMISSIONER OF SOCIAL SECURITY,

15              Defendant.

16

17        Plaintiff Venis J. Mahorne ("Plaintiff") seeks judicial review of a final decision of the

18   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

19   disability benefits under the Social Security Act.  (Doc. 1).  The matter is currently before the

20   Court on the parties' briefs, which were submitted without oral argument.  (Docs. 15, 17, 18).

21   Upon review of the Administrative Record (Doc. 11, "AR") and the parties' briefs, the Court

22   finds and rules as follows.

23   **I.     BACKGROUND**

24        **A. Administrative Proceedings and ALJ's Decision**

25        Plaintiff filed a Title XVI application for supplemental security income on February 14,

26   2019.  (AR 123-24).  Plaintiff's application was denied initially and upon reconsideration, and

27   _____

28   [1] Based on the parties' consent to magistrate judge jurisdiction for all purposes, the undersigned
     was authorized to preside over all proceedings effective May 18, 2023, pursuant to 28 U.S.C. § 636(c)(1).
     (Doc. 10).

1    Plaintiff requested a hearing before an administrative law judge ("ALJ").  (AR 131-41, 144).  On

2    December 9, 2021, ALJ L. Raquel BaileySmith held a hearing, during which Plaintiff,

3    represented by counsel, and an independent vocational expert testified.  (AR 35-58).  The ALJ

4    issued her decision on January 20, 2022, finding Plaintiff not disabled.  (AR 15-30).  On January

5    13, 2023, the Appeals Council declined Plaintiff's request for review.  (AR 1-3).

6          At the outset of her decision, ALJ BaileySmith noted that Plaintiff was found not disabled

7    in a prior February 1, 2018, ALJ decision.  (AR 15).  ALJ BaileySmith concluded the

8    presumption of continuing disability did not apply because of Plaintiff's change in age; a change

9    in the musculoskeletal listings since the prior decision; and additional evidence establishing the

10   existence of medically determinable impairments that were not previously considered.  (AR 16).

11         The ALJ then engaged in the five-step sequential evaluation process set forth by the

12   Social Security Administration.  20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ

13   found Plaintiff had not engaged in substantial gainful activity since February 14, 2019, the

14   application date.  (AR 18).  At step two, the ALJ determined that Plaintiff had the following

15   severe impairments: "right eye blindness; tri-compartmental osteoarthritis bilateral knees; small

16   fiber neuropathy; lupus; degenerative disc disease; and obesity."  (AR 18-20).  At step three, the

17   ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or

18   medically exceeds the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

19   Appendix 1.  (AR 20-21).

20         The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform

21   light work as defined in 20 C.F.R. 416.967(b), with the exceptions that "she requires a cane if

22   walking for more than 15 minutes or traversing over uneven terrain; cannot work on unprotected

23   heights or around moving machinery and parts; is able to perform tasks that do not require depth

24   perception or binocular vision; occasionally kneel and crouch and climb ramps and stairs, but

25   never crawl or climb ladders, ropes, or scaffolds."  (AR 21).  At step four, the ALJ found that

26   Plaintiff was capable of performing her past relevant work as a telephone solicitor, both as

27   generally and actually performed.  (AR 28).  Alternatively, the ALJ concluded jobs existed in

28   significant numbers in the national economy that Plaintiff could perform, including garment

2

1    sorter, price marker, and mail clerk.  (AR 28-29).  Thus, the ALJ concluded Plaintiff had not been

2    under a disability from the February 14, 2019, application date through the date of the decision.

3    (AR 30).

4              **B.  Medical Record and Hearing Testimony**

5              The relevant hearing testimony and medical record were reviewed by the Court and will

6    be referenced below as necessary to this Court's decision.

7    **II.      STANDARD OF REVIEW**

8              A district court's review of a final decision of the Commissioner of Social Security is

9    governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

10   Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

11   is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

12   evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

13   conclusion."  (*Id*. at 1159) (quotation and citation omitted).  Stated differently, substantial

14   evidence equates to "more than a mere scintilla[,] but less than a preponderance."  (*Id*.) (quotation

15   and citation omitted).  In determining whether the standard has been satisfied, a reviewing court

16   must consider the entire record as a whole rather than searching for supporting evidence in

17   isolation.  (*Id.*).

18             The court will review only the reasons provided by the ALJ in the disability determination

19   and may not affirm the ALJ on a ground upon which he did not rely.  Social Security Act § 205,

20   42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its

21   judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the

22   evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d

23   1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account

24   of an error that is harmless.  (*Id.*).  An error is harmless where it is "inconsequential to the

25   [ALJ's] ultimate nondisability determination."  (*Id*). (quotation and citation omitted).  The party

26   appealing the ALJ's decision generally bears the burden of establishing that it was

27   harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

28             A claimant must satisfy two conditions to be considered "disabled" and eligible for

1    benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to

2    engage in any substantial gainful activity by reason of any medically determinable physical or

3    mental impairment which can be expected to result in death or which has lasted or can be

4    expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

5    1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only

6    unable to do his previous work[,] but cannot, considering his age, education, and work

7    experience, engage in any other kind of substantial gainful work which exists in the national

8    economy."  42 U.S.C. § 1382c(a)(3)(B).

9         The Commissioner has established a five-step sequential analysis to determine whether a

10    claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

11    Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

12    claimant is engaged in "substantial gainful activity," the Commissioner must find that the

13    claimant is not disabled.  20 C.F.R. § 416.920(b).

14         If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

15    two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

16    C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

17    impairments which significantly limits [his or her] physical or mental ability to do basic work

18    activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's

19    impairment does not satisfy this severity threshold, however, the Commissioner must find that the

20    claimant is not disabled.  (*Id.*).

21         At step three, the Commissioner compares the claimant's impairment to impairments

22    recognized by the Commissioner to be so severe as to preclude a person from engaging in

23    substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more

24    severe than one of the enumerated impairments, the Commissioner must find the claimant

25    disabled and award benefits.  20 C.F.R. § 416.920(d).

26         If the severity of the claimant's impairment does not meet or exceed the severity of the

27    enumerated impairments, the Commissioner must pause to assess the claimant's "residual

28    functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's

4

1   ability to perform physical and mental work activities on a sustained basis despite his or her

2   limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the

3   analysis.

4       At step four, the Commissioner considers whether, in view of the claimant's RFC, the

5   claimant is capable of performing work that he or she has performed in the past (past relevant

6   work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

7   work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

8   the claimant is incapable of performing such work, the analysis proceeds to step five.

9       At step five, the Commissioner considers whether, in view of the claimant's RFC, the

10  claimant is capable of performing other work in the national economy.  20 C.F.R. §

11  416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational

12  factors such as the claimant's age, education, and past work experience.  (*Id.*).  If the claimant is

13  capable of adjusting to other work, the Commissioner must find that the claimant is not

14  disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the

15  analysis concludes with a finding that the claimant is disabled and is therefore entitled to

16  benefits.  (*Id.*).

17      The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

18  180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

19  Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

20  work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

21  *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

22  **III.    ISSUES AND ANALYSIS**

23      Plaintiff seeks judicial review of the Commissioner's final decision denying her

24  application.  (Doc. 1).  Plaintiff raises a single issue, arguing the ALJ erred in evaluating

25  Plaintiff's pain testimony.  (Doc. 15 at 14).

26  **A.  Legal Standard**

27      The ALJ is responsible for determining credibility,[2] resolving conflicts in medical

28  _____

[2] SSR 16-3p applies to disability applications heard by the agency on or after March 28,

5

1    testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A

2    claimant's statements of pain or other symptoms are not conclusive evidence of a physical or

3    mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at

4    *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a

5    physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir.

6    2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-

7    exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674

8    F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. §

9    404.1502(a). Determining whether a claimant's testimony regarding subjective pain or symptoms

10   is credible requires the ALJ to engage in a two-step analysis. (*Id.* at 1112). The ALJ must first

11   determine if "the claimant has presented objective medical evidence of an underlying impairment

12   which could reasonably be expected to produce the pain or other symptoms alleged."

13   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations

14   omitted). This does not require the claimant to show that her impairment could be expected to

15   cause the severity of the symptoms that are alleged, but only that it reasonably could have caused

16   some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

17       If the first step is met and there is no evidence of malingering, "the ALJ must provide

18   'specific, clear and convincing reasons for' rejecting the claimant's testimony." *Treichler v.*

19   *Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281).

20   *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse

21   credibility finding must be based on "clear and convincing reasons"). The ALJ must make

22   findings that support this conclusion, and the findings must be sufficiently specific to allow a

23   reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds

24

25   2016. SSR 16-3p eliminated the use of the term "credibility" to emphasize that subjective
     symptom evaluation "is not an examination of an individual's character," but an endeavor to
26   determine how "symptoms limit an individual's ability to perform work-related activities." SSR
     16-3p, 2017 WL 5180304, at *3. Nevertheless, the Ninth Circuit continues to reference an ALJ's
27   "credibility assessment" when reviewing claims that an ALJ impermissibly discounted a
     claimant's testimony. *E.g.*, *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).
28

1    and did not arbitrarily discredit the claimant's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885

2    (9th Cir. 2004).

3         The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the

4    claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."

5    *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22,

6    2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v.*

7    *Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if

8    the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,'

9    the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx.

10   595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead,

11   whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v.*

12   *Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to

13   show her work).

14        The ALJ may consider numerous factors in weighing a claimant's credibility, including

15   "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

16   prior inconsistent statements concerning the symptoms, and other testimony by the claimant that

17   appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

18   follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d

19   at 1284.  In evaluating the credibility of symptom testimony, the ALJ must also consider the

20   factors identified in SSR 16-3P. *Id*. (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.

21   1991)); *accord Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1226 (9th Cir. 2009). These

22   factors include:

23
         (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or
24       other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The
         type, dosage, effectiveness, and side effects of any medication an individual takes
25       or has taken to alleviate pain or other symptoms; (5) Treatment, other than
         medication, an individual receives or has received for relief of pain or other
26       symptoms; (6) Any measures other than treatment an individual uses or has used
         to relieve pain or other symptoms (*e.g*., lying flat on his or her back, standing for
27       15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors
         concerning an individual's functional limitations and restrictions due to pain or
28       other symptoms.

1    SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

2    supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*,

3    533 F.3d at 1039 (citations and internal quotation marks omitted).

4    　　　The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

5    demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th

6    Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A

7    finding that a claimant's testimony is not credible must be sufficiently specific to allow a

8    reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible

9    grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v.*

10   *Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

11   　　　"The fact that a claimant's testimony is not fully corroborated by the objective medical

12   findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,*

13   260 F.3d 1044, 1049 (9th Cir. 2001). *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your

14   statements about the intensity and persistence of your pain or other symptoms or about the effect

15   your symptoms have on your ability solely because the objective medical evidence does not

16   substantiate your statements."). Rather, where a claimant's symptom testimony is not fully

17   substantiated by the objective medical record, the ALJ must provide additional reasons for

18   discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must

19   specify what testimony is not credible and identify the evidence that undermines the claimant's

20   complaints – '[g]eneral findings are insufficient.'" (*Id.*) (*quoting Reddick v. Chater*, 157 F.3d 715,

21   722 (9th Cir. 1998)).

22   　　　However, the medical evidence "is still a relevant factor in determining the severity of the

23   claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

24   2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical

25   evidence from testimony that is "contradicted" by the medical records and concluded that

26   contradictions with the medical records, by themselves, are enough to meet the clear and

27   convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting*

28   *Carmickle*, 533 F.3d at 1161).

1          **B. Plaintiff's Testimony and ALJ Decision**

2          At the hearing, Plaintiff testified that she had lived alone for two to three years.  (AR 42).

3    She did not drive because she did not have a vehicle, and her daughter, who provided her in-home

4    service, or one of her other children would take her where she needed to go.  (AR 42).  Since the

5    earlier ALJ decision, her symptoms had gotten worse, and she used a cane or walker to ambulate.

6    (AR 45-46).  She received 65 or 66 hours a month of in-home services, including cooking,

7    cleaning, taking her to doctors appointments, helping her dress, and "different things" that needed

8    done.  (AR 46).  Plaintiff could get dressed on her own maybe three days a week and make a

9    sandwich maybe three or four days a week.  (AR 47).  She could stand for 15 to 20 minutes

10   before needing to sit down for 15 minutes and spent several hours a day laying down.  (AR 49).

11   She could lift 5 to 10 pounds one time a day.  (AR 50).  When she went to the grocery store, she

12   would either take her walker or use one of the motorized carts. (AR 51).

13          The ALJ summarized this testimony and ultimately concluded Plaintiff's "medically

14   determinable impairments could reasonably be expected to cause the alleged symptoms" but her

15   "statements concerning the intensity, persistence and limiting effects of these symptoms [were]

16   not entirely consistent with the medical evidence and other evidence in the record."  (AR 22).

17   The ALJ indicated the record showed Plaintiff had a history of tri-compartmental osteoarthritis of

18   bilateral knees, small fiber neuropathy, degenerative disc disease, and lupus.  (AR 22).  The ALJ

19   summarized the medical records, noting Plaintiff's continuing treatment with pain management

20   for her knee and back pain; notations of normal gait, normal sensation and strength, occasional

21   limping, and negative straight leg tests; and treatment with both oral medications and knee

22   injections, which did help improve her pain.  (AR 22-24).  The ALJ also noted a March 2020 skin

23   biopsy revealing small fiber neuropathy and a corresponding prescription for Pentoxifylline.  (AR

24   23).

25          The ALJ then opined:

26              Overall, the record shows that not much has changed in terms of the
                claimant's treatment or objective findings since the prior decision.
27              The record shows that longitudinally, the claimant's treatment has
                remained generally the same, she reported improvement with
28              treatment, and she has had mild to moderate examination findings.

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

> While the claimant submitted documentation showing that as of June 2021 the claimant was receiving 65 hours, 4 minutes of in-home supportive services for domestic services, bathing, grooming, transferring, and accompaniment to and from medical appointments (Exhibit B16E). However, it is unclear from the record who prescribed the service and why it is medically necessary. As to the claimant's gait and need for an assistive device, examination records from August, through December 2019 note the claimant had normal gait and station and did not use an assistive device (Exhibit B5F/31, 35, 45). In January and February 2020, the claimant also had normal gait (Exhibit B5F/23, 27). During a telehealth appointment in April 2020, it was noted the claimant required no assistive device for ambulation (Exhibit B5F/12). On her Function Report completed in June 2020, the claimant did not indicate she used a cane. She indicated she used a walker that was prescribed in 2017 after she had a stroke (Exhibit B4E). In June 2021, the claimant requested a cane due to her left knee (Exhibit 13F/34). Upon examination, she had antalgic gait (Exhibit B13F/153). In September 2021, the claimant was noted to use a cane (Exhibit B13F/23). However, her primary care provider indicated upon examination that the claimant had normal gait with no assistive device used for ambulation (Exhibit B13F/160). Nevertheless, because she did demonstrate antalgic gait, the use of a cane was included in the residual functional capacity.
>
> …
>
> As for activities of daily living, they are being performed at a level that does not support the level of complaints alleged. The claimant said she lives alone and has lived alone for two or three years. She said she has a driver's license but does not drive because she does not have a vehicle. She said her children give her rides. She said during a typical week, she can get dressed on her own three day [sic]. She reported that her daughters comb her hair. She said she could make a sandwich on her own three to four days per week and reported that a service provider cooks for her. She reported she does not do any household chores. She said her daughter does the grocery shopping and she goes to the store with her and uses either her walker or a special cart (Testimony; Exhibit B4E).

15

16

17

18

19

20

21

(AR 24-25).

22

**C. Analysis**

23

Plaintiff contends the ALJ failed to provide the requisite clear and convincing reasons

24

supported by substantial evidence for rejecting her testimony.  (Doc. 15 at 16).  Plaintiff notes

25

that after summarizing the medical record, the ALJ concluded that "not much has changed in

26

terms of the claimant's treatment or objective findings since the prior decision" and

27

"longitudinally, the claimant's treatment has remained generally the same, she reported

28

improvement with treatment, and she has had mild to moderate examination findings."  (*Id.*

1    (footnote omitted) (citing AR 24)).  However, Plaintiff argues "the ALJ did not identify which of

2    [her] statements were purportedly inconsistent with the record nor the evidence that contradicted

3    those statements" and the ALJ's reasoning was "factually incorrect" because Plaintiff's "medical

4    conditions and treatment had, in fact, changed since the prior decision which involved, in relevant

5    part, a meniscus tear of her left knee." (*Id.* at 17).  To the extent the ALJ relied on Plaintiff's

6    activities of daily living as grounds for rejecting her symptom testimony, Plaintiff argues the

7    ALJ's reasoning is legally insufficient because "the ALJ did not specify that Plaintiff's activities

8    contradicted one or more of her statements" and the ALJ failed to establish that Plaintiff spent a

9    substantial part of her day performing activities transferable to a work setting.  (*Id.* at 18-19).

10   Because Plaintiff asserts that the error was not harmless, she asks that the Court remand the

11   matter for further administrative proceedings.  (*Id.* at 21).

12          In response, Defendant first argues that "consistent with the agency's regulations and

13   rulings, the ALJ properly found that the objective medical evidence did not corroborate Plaintiff's

14   claims of disabling symptoms and functional limitations." (Doc. 17 at 6).  Defendant asserts

15   Plaintiff's argument focuses on "subjective pain ratings rather than objective evidence" and the

16   lack of physical examination evidence corroborating her testimony justified the ALJ finding it

17   less than persuasive.  (*Id.* at 7).  Defendant also points to the ALJ's discussion of Plaintiff's

18   treatment history as providing additional evidence to support the decision.  (*Id.* at 8).  As to

19   Plaintiff's daily activities, Defendant argues the ALJ appropriately considered them as one factor

20   weighing against her allegations.  (*Id.* at 8-9).  Finally, Defendant argues that if the Court does not

21   affirm the decision, "the proper remedy is to remand for further administrative proceedings—not

22   payment of benefits." (*Id.* at 9-11).

23          Plaintiff replies that the Commissioner focuses on whether the factual findings of the ALJ

24   are supported with substantial evidence without addressing whether the ALJ applied the correct

25   legal standard.  (Doc. 19 at 2).  Plaintiff asserts the "Commissioner is silent as to [her] argument

26   that the ALJ failed to discuss or explain evidence which conflicted with the ALJ's conclusions,"

27   specifically with respect to new treatments and reports of increased pain since the prior

28   determination.  (*Id.* at 4).  She also argues that the relevant inquiry is not whether it was

11

1    reasonable for the ALJ to conclude her activities of daily living were inconsistent with her

2    testimony but rather whether the ALJ made specific findings to establish that Plaintiff is able to

3    spend a substantial part of her day engaged in performance of physical functions that are

4    transferable to a work setting. (*Id.* at 5 (quoting *Orn*, 495 F.3d at 639 ).  Finally, Plaintiff

5    indicates the Commissioner's argument against remand for payment of benefits is irrelevant given

6    that she specifically asked for remand for further administrative proceedings. (*Id.* at 6).

7         The Court finds Plaintiff's arguments persuasive and concludes the ALJ's reasons

8    provided for discounting Plaintiff's testimony are not supported by substantial evidence.

9         First, with respect to the ALJ's conclusion that Plaintiff's testimony was not consistent

10   with the objective medical evidence (*see* AR 22), the ALJ indicated that there had not been a

11   change in the objective findings and Plaintiff's treatment had remained generally the same since

12   the prior ALJ decision.  That prior decision set forth findings that Plaintiff's severe impairments

13   included right eye blindness, lupus, and left knee meniscus tear post surgery. (AR 67).  However,

14   in the current decision, the ALJ concluded that, in addition, Plaintiff's severe impairments

15   included tri-compartmental osteoarthritis bilateral knees; small fiber neuropathy; lupus;

16   degenerative disc disease; and obesity. (AR 18).  Thus, the ALJ concluded Plaintiff suffered from

17   additional severe impairments that were not addressed in the prior decision.  The Regulations

18   provide that "a physical or mental impairment must be established by objective medical evidence

19   from an acceptable medical source." 20 C.F.R. § 416.921.  Thus, the ALJ's finding of additional

20   severe impairments—which must be supported by objective medical evidence—since the prior

21   decision is necessarily inconsistent with the subsequent finding that there had not been a change

22   in the objective findings since the prior decision.

23        Additionally, the discussion of the medical records relevant to that earlier decision does

24   not support the current ALJ's decision that Plaintiff's treatment remained generally the same.

25   The prior decision focused on impairments related specifically to Plaintiff's left knee with

26   minimal discussion of her right knee, and noted Plaintiff was "stable" with conservative treatment

27   of medications and therapy. (AR 71-72).  The records relevant to the current decision, however,

28   reveal new medications were prescribed due to Plaintiff's small fiber neuropathy, which was not

1   addressed in the prior decision; Plaintiff began receiving injections in both her left *and* right knee;

2   doctors ordered MRIs for lower back pain and planned for epidural injections to treat such; and

3   observations that conservative treatment had not yielded lasting results.  (AR 557, 582, 894-95,

4   901, 956, 979).  In light of these records, substantial evidence does not support the ALJ's

5   conclusion that Plaintiff's treatment had not changed since the prior decision, especially since the

6   prior decision did not reference, let alone discuss in any detail, treatment with injections.  *See*

7   *Garrison*, 759 F.3d at 1015 ("[W]e doubt that epidural steroid shots to the neck and lower back

8   qualify as 'conservative' medical treatment."); *Macina v. Colvin*, No. 24-204, 2024 WL 5116300,

9   at *3 (9th Cir. Dec. 16, 2024) (explaining epidural injections and pain medications *may* be

10  conservative treatment because "[w]hether a treatment is conservative is an assessment relative to

11  the affliction and other available treatments").

12      Second, the ALJ's conclusion regarding Plaintiff's daily activities is also not supported by

13  substantial evidence.  There are two grounds on which an ALJ may use a plaintiff's daily

14  activities to question a plaintiff's credibility as to her subjective symptoms: (1) when daily

15  activities demonstrate the plaintiff has transferable work skills, and (2) when daily activities

16  contradict the plaintiff's testimony as to the degree of functional limitation.  *Orn*, 495 F.3d at 659.

17  However, "disability [plaintiffs] should not be penalized for attempting to lead normal lives in the

18  face of their limitations."  *Reddick*, 157 F.3d at 722; *see Smolen*, 80 F.3d at 1284 n.7 ("The Social

19  Security Act does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits,

20  and many home activities may not be easily transferable to a work environment where it might be

21  impossible to rest periodically or take medication.").  "The mere fact that a plaintiff has carried

22  on with certain daily activities, such as grocery shopping, driving a car, or limited walking for

23  exercise, does not in any way detract from [their] credibility[.]"  *Webb v. Barnhart*, 433 F.3d 683,

24  688 (9th Cir. 2005) (quoting *Vertigan*, 260 F.3d at 1050).

25      Here, despite concluding Plaintiff's activities of daily living were "being performed at a

26  level that does not support the level of complaints alleged," the ALJ failed to explain *how*

27  Plaintiff's activities conflicted with her alleged limitations or demonstrate an ability to function in

28  the workplace.  This deficiency is particularly acute given that the ALJ acknowledged that

13

1   Plaintiff indicated she engaged in basic actives such as dressing herself and preparing a sandwich

2   without assistance only three to four times a week.  (AR 25).  Because the ALJ simply listed

3   Plaintiff's activities, it is unclear which of Plaintiff's symptomology testimony the ALJ rejected

4   based on Plaintiff's limited activities or how these limited activities support Plaintiff's ability to

5   work.

6        For all these reasons, the ALJ did not identify specific, clear, and convincing reasons

7   supported by substantial evidence for discrediting Plaintiff's symptom testimony.  An ALJ's error

8   may be harmless where she provides valid reasons for disbelieving a plaintiff's testimony in

9   addition to invalid reasons.  *Molina*, 674 F.3d at 1115 (collecting cases).  Here, however, the ALJ

10  provided no valid reasons for rejecting Plaintiff's symptomology testimony such that the decision

11  is not supported by substantial evidence.

12       Accordingly, the error is not harmless and, based on the Court's review of the entire record,

13  remand for further proceedings is necessary.  *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th

14  Cir. 2015) ("Unless the district court concludes that further administrative proceedings would

15  serve no useful purpose, it may not remand with a direction to provide benefits").

16  **IV.    CONCLUSION AND ORDER**

17       For the reasons stated above, the Court ORDERS as follows:

18  1.  Plaintiff's Motion for Summary Judgment (Doc. 15) is GRANTED;

19  2.  The decision of the Commissioner is reversed, and this matter is remanded back to the

20      Commissioner of Social Security for further proceedings consistent with this order; and

21  3.  The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Venis J.

22      Mahorne and against Defendant Commissioner of the Social Security Administration.

23  IT IS SO ORDERED.

24     Dated:   **July 30, 2025**              _____

25                                  UNITED STATES MAGISTRATE JUDGE

26

27

28